IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN SIERRA,<br><br>      Plaintiff,<br><br>  v.<br><br>E.M. MONTEJO,<br><br>      Defendant. | No. 2:20-CV-1372-KJM-DMC-P<br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the court is Plaintiff's complaint. See ECF No. 1. The Court dismisses the complaint with leave to amend.

**I. SCREENING REQUIREMENT**

The Court must screen complaints from prisoners seeking relief against a governmental entity, officer, or employee. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain a short and plain statement of the claim that a plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

1

1  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause
2  of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.
3  662, 678 (2009). To survive screening, a plaintiff's claims must be facially plausible, which
4  requires sufficient factual detail to allow the Court to reasonably infer that each named defendant
5  is liable for the misconduct alleged. Id. at 678–79; Moss v. U.S. Secret Service, 572 F.3d 962, 969
6  (9th Cir. 2009). Plaintiffs must demonstrate that each defendant personally participated in the
7  deprivation of the plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). If the
8  allegations "do not permit the court to infer more than the mere possibility of misconduct," the
9  complaint does not state a claim. Iqbal, 556 U.S. at 679. The complaint need not identify "a precise
10 legal theory." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1038 (9th Cir. 2016).

11 The Court must construe a pro se litigant's complaint liberally. See Haines v.
12 Kerner, 404 U.S. 519, 520 (1972) (per curiam); Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir.
13 2012). However, "'a liberal interpretation of a civil rights complaint may not supply essential
14 elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d
15 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).
16 The Court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff
17 can prove no set of facts in support of his claim which would entitle him to relief." Hayes v. Idaho
18 Corr. Ctr., 849 F.3d 1204, 1208 (9th Cir. 2017).

## II. PLAINTIFF'S ALLEGATIONS

20 Plaintiff is a state prisoner previously incarcerated at California Medical Facility
21 (CMF). ECF No. 1 at 11. He names at least eight defendants in the first few pages of his complaint:
22 (1) Dr. Eusebio Marvin Montejo, a physician at CMF; (2) Dr. Nnenna N. Ikegbu, the chief physician
23 at CMF; (3) Dr. Lori Austin, an "executive officer"; (4) the California Department of Corrections
24 and Rehabilitation (CDCR); (5) the California Medical Board (CMB); (6) the California Victim's
25 Compensation and Government Claims Board (VCB); (7) Dr. Sawicki; and (8) S. Gates. Id. at 1,
26 3, 11. After that, Plaintiff's complaint is meandering, conclusory, and difficult to decipher. Though
27 seemingly attempting to follow a logical order, as currently drafted Plaintiff's complaint skips from
28 one conclusion to the next with little real factual substance beyond his initial allegations. See id. at

1   12–24.

2   Plaintiff's starts by filling seven pages with United States and California statutory
3   law. Id. at 4–10. After arguing that criminal statutes should be used to formulate causes of action
4   for civil cases, he goes on to cite a blend of statutes, including sections of California's business and
5   government code to the federal Americans with Disabilities Act. Id. After listing statutes, Plaintiff
6   details the core of his complaint, which encompasses a far-reaching conspiracy to deny inmates
7   proper medical care and (possibly) adequate access to a prison appeals system. See id. at 12–23.

8   Plaintiff's allegations of misconduct begin with Dr. Montejo. Id. at 12. Montejo
9   allegedly confiscated Plaintiff's walker by filing a false medical report that he knew would leave
10  Plaintiff in physical pain. Id. Confiscation of Plaintiff's walker was merely part of a larger "scheme"
11  on Montejo's part. Id. As part of that scheme, Montejo allegedly used implied threats of physical
12  harm and requested CMF officials assign him a bodyguard whenever he was in CMF's D-dorm. Id.
13  Plaintiff alleges that he could not appeal the confiscation because the appeals process is a sham
14  creating an "atypical and significant hardship." Id. Defendant Austin, whom Plaintiff contends is
15  chief of medical appeals, assertedly facilitated the sham and would not acknowledge Plaintiff's
16  claims. Id.

17  Around March 2020, Austin gave Plaintiff what he calls a "tongue-lashing" that
18  offended him. Id. Plaintiff appealed Austin's conduct. Id. In that appeal, he contended that Austin
19  tried to force Plaintiff to remove evidence of Montejo's "fraud" and Austin's knowledge of that
20  fraud from a separate appeal. See id. The evidence, in Plaintiff's view, establishes the intentional
21  fraud regarding confiscation of his walker. Id. For, although Montejo apparently returned Plaintiff's
22  walker and noted Plaintiff's need in his medical file, CMF soon thereafter occasioned to confiscate
23  inmates' walkers, canes, wheelchairs, and similar medical aids. Id. Plaintiff's implication is
24  possibly that Montejo and others tried to cover up some fraud by first returning the walker, and
25  only then did CMF happen to confiscate medical aids. Id. Montejo may have then again altered
26  Plaintiff's file to indicate he did not need a walker. Id. Plaintiff alleges that Austin knew of and
27  conspired in the "systemic" misconduct. Id.

28  Plaintiff goes on to allege, without any real elaboration, that Defendants

1    Ikegbu, Gates, the VCB, and the CMB all participated in the alleged conspiracy. Id. at 13. As
2    apparent proof of a conspiracy, he asserts that the state agencies never gave him (or any inmate)
3    notice of complaints against Montejo, Ikegbu, Gates, or Austin. See id. 13. He asserts that the
4    California Department of Corrections and Rehabilitation (CDCR) does not settle prisoner cases. Id.
5    Plaintiff asserts that he knew every appeal he filed against Montejo would be denied. Id. at 14.

6           As a result of the above, Plaintiff claims that he was experienced significant
7    emotional and physical pain, including mental anguish. Id. He was, in his view, denied meaningful
8    participation in his medical care. Id. Plaintiff again asserts his belief that Montejo's bodyguard is
9    proof of conspiracy because the extra guards would only be present on days when medical aids
10   were confiscated. Id. at 15. Plaintiff believes that the state agency defendants acquiesced to the
11   conspiracy because they have record of other inmates' complaints against Montejo. Id. Each
12   defendant, Plaintiff goes on at some length to say, conspired to carry out a scheme to cover up
13   Montejo's alleged false medical reports. Id. at 16. Plaintiff writes that even the Defendants that did
14   not issue the reports are liable because they knew of the false reports and knew that the reports
15   imposed an atypical and significant on affected inmates. Id. at 16–17.

16          Based on his allegations, Plaintiff goes on to make several claims. Id. at 18–23. First,
17   Plaintiff alleges an Eighth Amendment claim. Id. at 18–19. He reasserts a conspiracy under 42
18   U.S.C. §§ 1985 and 1986, specifically amongst Defendants to cover Montejo's schemes. Id.

19          Second, Plaintiff contends that the "appeals reviewers"— Austin, Ikegbu, and
20   Gates—are liable even as appeals reviewers because they participated in the scheme. See id. at 19–
21   21. He believes that Defendants' continuing pattern of abusing the appeals system to participate in
22   schemes like the one he alleges overcome any defense. See id. at 20–21.

23          Third, Plaintiff contends that the "appeals reviewers" violated his First Amendment
24   rights because they censored his speech based on viewpoint by threatening him to force him to
25   remove evidence from an administrative appeal. Id. at 21.

26          Fourth, Plaintiff contends that the CMB violated the Eighth and Fourteenth
27   Amendments, as well as federal acts. Id. at 22. He asserts that they were put on notice of Montejo's
28   malfeasance by prisoners' complaints. Id. Yet, they acquiesced in the alleged harm. Id. CMB

1  allegedly intentionally withheld information to aid the scheme. See id.

2  Fifth, Plaintiff claims that Defendants Montejo, Austin, Ikegbu, Gates, the CMB, and the VCB recklessly disregarded several California and United States civil statutes. Id. at 23.

Sixth and finally, Plaintiff alleges that VCB and CMB acted intentionally and conspired to and promoted "sham" denials of claims filed by prisoners. Id.

## II. DISCUSSION

To the extent that Plaintiff may raise an Eighth Amendment claim against Montejo for unconstitutionally disregarding a serious medical need (e.g., by confiscating Plaintiff's walker), Plaintiff states a claim. Insofar as Plaintiff alleges that Austin intimidated and threatened him so he would remove evidence from an administrative appeal, Plaintiff states a First Amendment claim.

Plaintiff does not state any other claim. The state agencies are immune, and Plaintiff has not sufficiently pled a causal connection between the other Defendants and any deprivation. He has not established a conspiracy claim.

**A. § 1983 Standards:**

Section 1983 provides a remedy for the violation of constitutional and federal statutory rights by a person acting under the authority of state law. 42 U.S.C. § 1983; see, e.g., Sampson v. County of Los Angeles, 974 F.3d 1012, 1018 (9th Cir. 2020); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). Section 1983, however, is not itself a source of substantive rights. Albright v. Oliver, 510 U.S. 266, 271 (1994); Sampson, 974 F.3d at 1018; Hall, 697 F.3d at 1068. Rather, § 1983 is a vehicle for vindicating rights "elsewhere conferred." Sampson, 974 F.3d at 1018.

To state a claim under § 1983, Plaintiff must allege (1) a deprivation of his constitutional rights or federal protected rights and (2) that the defendant's actions were taken under color of state law. Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 921 (9th Cir. 2011) Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006); see Sampson, 974 F.3d at 1018; Hall, 697 F.3d at 1068. Plaintiff, in other words, must plausibly allege that he suffered a violation of a federally protected right and that a person acting under color of state law *committed* that violation. See, e.g., Sampson, 974 F.3d at 1018; Long, 442 F.3d at 1185.

A person deprives another of a constitutional right within § 1983's meaning if they take an affirmative action, participates in another person's affirmative action, or fails to take an action that they are legally required to take and that causes the alleged deprivation. Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007); see Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012). Personal participation, however, is only one predicate for liability under § 1983. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see Lacey, 693 F.3d at 915. "The requisite causal connection may [also] be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.3d at 743). This standard of causation resembles the typical "foreseeability" formulation of proximate cause. Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

In sum, there can be no § 1983 liability unless there is an adequate link or connection between a defendant's actions and the claimed deprivation. See, e.g., Arnold, 637 F.2d at 1355; Johnson, 588 F.2d at 743; see also Harper, 533 F.3d at 1026. A plaintiff must show that a defendant was the actionable cause of a claimed injury. Harper, 533 F.3d at 1026. Vague and conclusory allegations of official participation in a civil rights violation are unsatisfactory. Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014); Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Sovereign Immunity Shields the State Agency Defendants:**

The Eleventh Amendment provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Generally, the Eleventh Amendment precludes federal courts from exercising jurisdiction over suits by individuals against a State and its instrumentalities. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97–100 (1984); Doe v. Regents of the Univ. of Cal., 891 F.3d 1147, 1153 (9th Cir. 2018); see Allen v. Cooper, 140 S. Ct. 994, 1000 (2020); Maldonado v. Johnson, No. CV 19-5312-JVS (SP), 2021 WL 1152889, at *2 (C.D. Cal. Feb. 12, 2021).

///

There are a few exceptions to that rule. See, e.g., Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985); Holley v. Cal. Dep't Corrs., 599 F.3d 1108, 1111 (9th Cir. 2010); Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 817–18 (9th Cir. 2001). States can consent to suit and waive immunity. Sossamon v. Texas, 563 U.S. 277, 283–85 (2011); Pennhurst, 465 U.S. at 99; Holley, 599 F.3d at 1111; Maldonado, 2021 WL 1152889, at *2. Congress may abrogate States' immunity. See Coleman v. Court of Appeals of Md., 566 U.S. 30, 35 (2012); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55–56 (1996); Pennhurst, 465 U.S. at 99; Holley, 599 F.3d at 1111; Maldonado, 2021 WL 1152889, at *2. And parties may sue state officials for prospective injunctive relief. See Seminole Tribe, 517 U.S. at 73; Doe, 891 F.3d at 1153; Krainski v. Nevada ex rel. Bd. of Regents, 616 F.3d 963, 967–68 (9th Cir. 2010); Douglas, 271 F.3d at 817–18.

Section 1983 does not override States' sovereign immunity. E.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 67, 71 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent."). Too, immunity extends to arms of the State, like state agencies. Crowe v. Oregon State Bar, 989 F.3d 714, 730 (9th Cir. 2021); Brown v. Cal. Dep't Corr., 554 F.3d 747, 752 (9th Cir. 2009); Durning v. Citibank, N.A., 950 F.2d 1419, 1422–23 (9th Cir. 1991); see Pennhurst, 465 U.S. at 100.

California has consented to some suit in its own courts, such as under the California Torts Claims Act. See, e.g., Maldonado, 2021 WL 1152889, at *2. But California has not waived its immunity in federal court. E.g., Brown, 554 F.3d at 752; Dittman v. California, 191 F.3d 1020, 1025–26 (9th Cir. 1999); see also Atascadero, 473 U.S. at 241. Arms of the State of California thus share in California's immunity absent waiver. See, e.g., Crowe, 989 F.3d at 730; Durning, 950 F.2d at 1422–23; Frisby v. California, No. 1:20-cv-00228-DAD-GSA-PC, 2021 WL 2983144, at *3 (E.D. Cal. July 15, 2021); see also Brown, 554 F.3d at 752.

The Court forgoes extensive analysis as to the agency defendants. As other courts have concluded, the CMB is an instrumentality of California entitled to sovereign immunity.[1] E.g.,

---

[1] The Medical Board of California (here referred to as CMB to with Plaintiff's naming of defendants) is a state entity agency established under California statutory law. See Cal. Bus. & Prof. Code § 2001; Junho Hyon v. Henderson, No. 2:19-cv-0857-MCE-AC, 2019 WL 3035405, at *2 (E.D. Cal. July 11, 2019). As courts in this district have concluded, there is no evidence that the CMB or State has consented to suit. Junho Hyon, 2019 WL 3035405, at *2

Forster v. Cty. of Santa Barbara, 896 F.2d 1146, 1149 (9th Cir. 1990); Rhee v. Gnanadev, No. 5:19-cv-02223-RGK (SHK), 2021 WL 1431069, at *6 (C.D. Cal. Mar. 15, 2021); Junho Hyon v. Henderson, No. 2:19-cv-0857-MCE-AC, 2019 WL 3035405, at *2 (E.D. Cal. July 11, 2019); Bonner v. Med. Bd. of Cal., No. 2:17-cv-00445-KJM-DB, 2018 WL 4699996, at *5 (E.D. Cal. Sept. 30, 2018); Sprague v. Med. Bd. of Cal., No. 07-CV-1561-JLS (LSP), 2009 WL 10698417, at *3 (S.D. Cal. Mar. 30, 2009). Similarly, the Court concludes that the VCB is also a state agency protected by sovereign immunity. See, e.g., Kyle v. Cal. Victim Comp. Bd., No. 2:21-cv-0479 KJN P, 2021 WL 1338728, at *1; see also Cal. Govt. Code § 13901(a) (establishing the Victims Compensation Board within California's state government); Crowe, 989 F.3d at 730–31 (discussing the five factors used to determine whether an instrumentality of the state government is an "arm of the state" entitled to sovereign immunity). Finally, CDCR is also an arm of the State and is immune from suit. See, e.g., Brown, 554 F.3d at 752; Smith v. Richardson, No. 2:19-cv-1605 TLN AC P, 2021 WL 1784843, at *2 (E.D. Cal. May 5, 2021); Love v. Salinas, No. 2:11–cv–00361–MCE–KKN, 2011 WL 2620453, at *3–4 (E.D. Cal. July 2, 2011); see also Alabama v. Pugh, 438 U.S. 781, 781–82 (1978); Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995).

**C. Causal Link Under § 1983:**

The Court has concluded that Plaintiff has stated viable First Amendment and Eighth Amendment claims against Austin and Montejo. But other than broadly alleging that the "appeals reviewers," probably including Ikegbu and Gates, and are caught up in the scheme by means of abusing the appeals process, Plaintiff never connects the other Defendants to any wrongdoing.

Although prisoners have a First Amendment right to file grievances, they have no standalone due process rights or entitlement related to a particular grievance procedure. See Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009); Garcia v. Seeley, 854 F. App'x 882, 883 (9th Cir. 2021); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Woolery v. Shasta Cty. Jail, No. 2:21-cv-0166 DB P, 2021 WL 1946512, at *4 (May 14, 2021). A prison's grievance procedure is a procedural right that does not confer any substantive rights on inmates. See Garcia, 854 F. App'x at 883; Ramirez, 334 F.3d at 860; Holt v. Alvarado, No. 1:19-cv-00930-NONE-GSA-PC, 2020 WL 4922378, at *5 (E.D. Cal. Aug. 21,

2020); Johnson v. Felker, No. 2:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013); see also Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Woolery, 2021 WL 1946512, at *4. Even officials' disregard of or failure to properly facilitate an appeals process within a prison does not raise constitutional issues. See, e.g., Woolery, 2021 1946512, at *4; see also Buckley, 997 F.2d at 495; Johnson, 2013 WL 6243280, at *6.

Ikegbu and Gates are not liable for actions related to the grievance process, such as denying appeals. Even assuming that an actual harm does underly Plaintiff's appeals, the assumption that anyone even tangentially connected to a harm is liable for damages is not correct. A plaintiff must plausibly plead that a defendant was the actionable cause of a claimed injury. See, e.g., Harper, 533 F.3d at 1026. Plaintiff must plausibly allege that he suffered a violation of a federally protected right and that a person acting under color of state law caused that deprivation. See, e.g., Sampson, 974 F.3d at 1018. Instead, though, all Plaintiff does is make sweeping, unsubstantiated allegations that officials like Ikegbu and Gates are involved in a conspiracy because he "knew" they would deny his appeals. See, e.g., ECF No. 1 at 14–15. Vague, disjointed allegations that Defendants are involved in a nefarious conspiracy fall far short of the pleading threshold. See Litmon, 768 F.3d at 1241; Ivey, 673 F.2d at 268. The same is true of Dr. Sawicki, who Plaintiff never discusses in the complaint.

The Court will grant leave to amend so that he may attempt to establish plausible causal links between each Defendant and an actionable harm.

**D. Conspiracy Under 42 U.S.C. §§ 1985 and 1986:**

Section 1985 prohibits conspiracies to interfere with individuals' civil rights. See generally 42 U.S.C. § 1985. To state a cause of action under § 1985(3), plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) a personal injury, property damage, or deprivation of any right or privilege of a citizen of the United States. See Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971); Fazaga v. Fed. Bureaus of Investigation, 965 F.3d 1015, 1059 (9th Cir. 2020); Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Powell v. County of Solano, No. 2:19-cv-2459 DB P, 2020 WL 1923169, at *8 (E.D. Cal. Apr. 21, 2020).

1          Section 1985 only applies where is racial or other class-based discriminatory animus behind the conspirators' conduct. E.g., Griffin, 403 U.S. at 102; RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992); Powell, 2020 WL 1923169, at *8.

          Furthermore, conspiracy claims under § 1985 must allege *specific* facts to support the allegation that defendants conspired together. Vargas v. Costa, 829 F. App'x 795, 796 (9th Cir. 2020); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988); Powell, 2020 WL 1923169, at *8; see Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992). Mere allegations of a conspiracy without factual particularity do not state a claim under § 1985. See, e.g., Vargas, 829 F. App'x at 796; Karim-Panahi, 839 F.2d at 626.

          To establish a conspiracy, Plaintiff must demonstrate the existence of a meeting of the minds or an agreement to violate constitutional rights. E.g., Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010); United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989); Powell, 2020 WL 1923169, at *8. Each conspirator need not know if the exact details of a conspiracy, but each conspirator must share a common objective. Crowe, 608 F.3d at 440; United Steelworkers, 865 F.2d at 1541; Powell, 2020 WL 1923169, at *8. The agreement need not be overt and may be inferred from the circumstances. Crowe, 608 F.3d at 440.

          Plaintiff directly alleges that Defendants conspired together. Otherwise, his conclusory allegations do not concretely link any Defendant, especially the state agencies and appeals reviewers, together in an agreement. Even when the Court considers that an agreement need not be overt, Plaintiff's current pleadings at best indicate that each Defendant may have at some point been tangentially connected to Plaintiff's complaints; for example, by reviewing a grievance challenging Dr. Montejo's confiscation of Plaintiff's walker. That kind of illusory allegation of a conspiracy is insufficient. Plaintiff's sweeping allegations of a grand, malevolent scheme to protect Montejo and deny prisoner complaints do not state a cognizable conspiracy claim. Plaintiff must specifically and plausibly assert facts demonstrating which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of his constitutional rights. See, e.g., Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997); Powell, 2020 WL 1923169, at *8.

1   Finally, Plaintiff does not make out a § 1986 claim. Section 1986 provides a cause
2 of action against defendants who know of a conspiracy to commit the wrongs mentioned in § 1985,
3 know that those wrongs are about to be committed, and who have the power to prevent those wrongs
4 but fail to do so. 42 U.S.C. § 1986; Cerrato v. San Francisco Cmty. Coll. Dist., 26 F.3d 968, 971
5 n.7 (9th Cir. 1994); Karim-Panahi, 839 F.2d at 626; Hamilton v. Hurtado, No. 12cv1940 JAH
6 (RBB), 2013 WL 3964755, at *7 (S.D. Cal. July 31, 2013). A valid claim under § 1985 is
7 consequently a textual perquisite for a claim under § 1986. See 42 U.S.C. § 1986; Karim-Panahi,
8 839 F.2d at 626; I.H. v. Oakland Sch. for Arts, 234 F. Supp. 3d 987, 994 (N.D. Cal. 2017). Because
9 Plaintiff has not established a claim under § 1985, he has not stated a claim under § 1986.

## III. CONCLUSION

11   Because it is possible that some of the deficiencies identified in this order may be
12 cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the
13 entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is
14 informed that, as a general rule, an amended complaint supersedes the original complaint. See
15 Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to
16 amend, all claims alleged in the original complaint which are not alleged in the amended complaint
17 are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends
18 the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended
19 complaint complete. See Local Rule 220. An amended complaint must be complete in itself without
20 reference to any prior pleading. See id.

21   If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the
22 conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis
23 v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each
24 named defendant is involved and must set forth some affirmative link or connection between each
25 defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir.
26 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

27   Because some of the defects identified in this order cannot be cured by amendment,
28 Plaintiff is not entitled to leave to amend as to such claims. Plaintiff, therefore, now has the

following choices: (1) Plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the Court will address the remaining claims; or (2) Plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the Court will issue findings and recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260–61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's original complaint is dismissed with leave to amend; and

2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

Dated: August 30, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE